# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**YVETTE BERGERON**

**VERSUS**

**COMMERCE TITLE & ABSTRACT COMPANY**

**CIVIL ACTION**

**NO. 24-692-JWD-SDJ**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* ("*MSJ*") (Doc. 19) filed by Commerce Title & Abstract Company ("Defendant" or "Commerce Title"). Plaintiff Yvette Bergeron ("Plaintiff" or "Bergeron") opposes the motion. (Doc. 24.) Defendant filed a reply. (Doc. 27.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's *MSJ* is granted.

## I.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is a licensed Louisiana attorney who previously owned and operated her own real estate title company, Title Resource. (*Statement of Uncontested Material Fact* ("*SUMF*"), Doc. 19-13 at 1–2, ¶¶ 1, 3.)[1] Commerce Title is another real estate title company, for which Plaintiff worked prior to starting Title Resource. (*Id.* at 1–2, ¶¶ 2–3.) In Fall 2020, Commerce Title's managing attorneys/owners, Calvert Stone and Dominique "Niki" Beeson, discussed with Plaintiff the possibility of Plaintiff's returning to work for Commerce Title as a closing attorney. (*Id.* at 2, ¶ 3.) According to Plaintiff, she accepted this employment offer "on the condition that two of her closing processors [at Title Resource], Kathy Achord and Angela Babin, join[] her and that they work in [Commerce Title's Prairieville] office." (*Id.*) "Plaintiff explained [to Stone and Beeson]

---

[1] Unless otherwise indicated (e.g., with a qualifying record citation), when the Court cites the *SUMF*, Plaintiff has admitted the cited material. *See* M.D. La. Civ. R. 56(f).

that in-person staff were needed during closings to ensure that the process [wa]s efficiently and properly conducted." (*Id.*) Plaintiff avers that Stone and Beeson orally agreed to this arrangement, (*id.*), and that Commerce Title renovated its Prairieville office "in anticipation of having three additional employees," (*id.* at 5, ¶ 7).

Before Plaintiff began working at Commerce Title in November 2020, (*id.* at 2, ¶ 3), she received a copy of the Employee Handbook, which described Commerce Title's remote work policy, (*id.* at 6–7, ¶ 11). As of July 15, 2020, that policy gave "[a]ll employees (except for attorneys, receptionists, post-closing, marketing, and human resources) . . . the option to work from home *permanently*," (Doc. 19-7 at 63 (emphasis added)), with certain terms and conditions which are not relevant here, (*see* Docs. 19, 24, 27). Plaintiff signed an acknowledgement that she "had received and reviewed" the handbook. (Doc. 19-13 at 7, ¶ 12; *see, e.g.*, Doc. 19-7 at 67–68.) The handbook included the following agreement:

> I . . . agree that neither this document nor any other communication shall bind [Commerce Title] to employ me now or hereafter and that my employment may be terminated by me or the company without reason at any time. I understand that no representative of the company has any authority to enter into any agreement for employment for any specified period of time or to assure any other personnel action *or to assure any benefits or terms or conditions of employment, or make any agreement contrary to the foregoing.*
>
> I also understand and agree that *this agreement may not be modified orally* and that only the president of the company may make a commitment for employment. I also understand that *if such an agreement is made, it must be in writing and signed by the president of the company.*

(Doc. 19-7 at 66 (emphasis added); *see also* Doc. 19-13 at 7, ¶ 13.) Plaintiff did not seek or obtain written modification of the remote work policy with respect to Achord or Babin. (*See* Doc. 19-13 at 7, ¶ 14; Doc. 24-1 at 8–9, ¶ 14; *see also* Doc. 19-7 at 3.)

In November 2020, twenty-one of Commerce Title's fifty-seven employees worked remotely. (Doc. 19-7 at 4.) "[V]irtually every one of these . . . employees [wa]s engaged in"

essentially the same work as Achord and Babin. (*Id.* at 5.) No one ever told Achord and/or Babin that their employment was contingent on working in-person full-time. (Doc. 19-13 at 5–6, ¶¶ 8, 10.) On the contrary, Achord has sworn in her affidavit that she and Babin "openly discussed" remote work with Plaintiff before accepting their respective employment offers and that Plaintiff "specifically advised" that they "would be entitled to take advantage of Commerce Title's work-from-home program, just like other eligible Commerce Title employees." (*Id.* at 6, ¶ 9 (quoting Doc. 19-4 at 3).) Plaintiff does not dispute that this conversation took place but insists that all parties understood that Achord and Babin would not "be 100% remote." (Doc. 24-1 at 6–7, ¶¶ 8–10; *see also id.* at 11, ¶ 20; Doc. 24-3 at 1, ¶ 1.)

Achord and Babin both elected to work remotely beginning in early-2021. (Doc. 19-13 at 7–8, ¶¶ 15, 18.) As a result, Plaintiff did not consistently have in-person staff to assist her with closings. (*Id.* at 2, ¶ 4.) More specifically, Commerce Title "did not require" Achord and Babin to work in-person, telling Plaintiff that "it was their option to work remotely." (*Id.* at 3, ¶ 7.)

Commerce Title used SoftPro computer software "to manage its client files and to produce the work product required by its customers." (*Id.* at 8, ¶¶ 16–17 (quoting Doc. 19-4 at 2); *see also* Doc. 19-4 at 2 (giving a more detailed explanation of SoftPro's functions).) Plaintiff was "overwhelmed" by SoftPro. (Doc. 19-13 at 8–9, ¶¶ 17, 21.)[2] And she frequently deviated from Commerce Title's digital system, (*see, e.g.*, Doc. 19-2 at 5; Doc. 19-7 at 69; Doc. 19-8 at 1–2), which created work for other employees, (Doc. 19-13 at 7–8, ¶ 16 (citing Doc. 19-4 at 3–4); *see also* Doc. 19-7 at 69). Plaintiff also required Achord and Babin to perform additional tasks like screening Plaintiff's calls. (Doc. 19-2 at 6; *see also* Doc. 19-13 at 7–8, ¶ 16 (collecting examples).)

---

[2] (*See also* Doc. 19-2 at 5 (explaining that Plaintiff did not "embrac[e] the Commerce Title system," but rather "quickly began using less productive workarounds"); Doc. 19-5 at 3 (noting that, "on many occasions," Plaintiff stated "that she could not adhere to the digital system at Commerce Title"); Doc. 19-6 (observing that Plaintiff was unhappy with, *inter alia*, "Commerce Title's computer-based closing software").)

Plaintiff "frequently communicated" her struggles and displeasure with Commerce Title's remote work policy, its digital system, and its processes. (Doc. 19-13 at 8–9, ¶¶ 19, 22–23; *see also id.* at 10–11, ¶ 27 (noting that Plaintiff "frequently" complained about having to make photocopies and scan documents, even though Commerce Title attorneys had long performed such tasks); Doc. 24-1 at 12, ¶ 23.) Vanessa Thibodeaux, Commerce Title's director of human resources, swore in her affidavit that "numerous employees" had lodged complaints "that they had been disparaged or treated disrespectfully by [Plaintiff]," often in connection with Plaintiff's "dislike for and unhappiness with Commerce Title's work-from-home polic[y]." (Doc. 19-13 at 9–10, ¶¶ 24–25; *see also* Doc. 24-1 at 12–13, ¶¶ 24–25.)

On February 21, 2022, Plaintiff sent an e-mail to Stone and Beeson, among others, wherein she expressed that Commerce Title "need[ed] more warm bodies" in its offices and proposed that one closing processor be present each day. (Doc. 19-2 at 11.) On February 24, 2022, Commerce Title responded by "changing company policy to ensure that at least one (1) additional staff member would be present" each day. (*Id.* at 5, 12.) Nevertheless, Plaintiff continued to complain about the remote work policy and, in February 2023, told Achord and Babin that she "was going to require that they be physically present" full-time. (*Id.* at 5–7; *see also* Doc. 19-7 at 74 ("We have someone [in the office] every day now[,] and [Plaintiff's] still not happy. So she's just upset that Kathy and Angela don't want to go back.").) Then, on April 11, 2023, Plaintiff sent the following e-mail to Stone, Beeson, and Thibodeaux:

> I'm at a breaking point. I need assistance. I'm not going into a dissertation, getting straight to the point. I was hired with two in-office assistants and I have none. My compromise, although I don't think that I need to, is that 5 days a week, 8 hours a day, either Angela [Babin] or Kathy [Achord] be in the office.

(Doc. 19-2 at 21; *see also* Doc. 19-13 at 12, ¶ 32.) On April 12, 2023, Stone suggested that it was "a good time for [Plaintiff and Commerce Title] to go [their] separate ways." (Doc. 19-2 at 20.) Plaintiff replied:

> Understood, but I don't share your sentiment. Every time someone asked me about going back to Commerce Title, I said the same thing[:] "Love the people, *but the processes are killing me*." *That's all anyone will think about my exit, that I wasn't my best self.* Probably the more accurate adage is that you can't teach an old dog new tricks.

(*Id.* (emphasis added).)

Commerce Title terminated Plaintiff on April 12, 2023. (Doc. 24-2 at 1.) In the Separation Notice filed with the Louisiana Workforce Commission, Commerce Title designated Plaintiff's termination a "[l]ayoff," with the explanation being "[r]eduction in force." (*Id.*) In their affidavits, Stone and Beeson swore that Plaintiff was terminated for: (1) "picking and choosing the company policies to which she would adhere"; (2) "expressing publicly [her] disdain for Commerce Title's . . . policies, processes and technology"; (3) treating other Commerce Title employees "insensitive[ly]"; and (4) lacking "understanding and commitment to Commerce Title to serve its customers expertly, professionally, and courteously." (Doc. 19-2 at 8–9; Doc. 19-6 at 2.) Commerce Title has not filled Plaintiff's position or otherwise hired someone to take over Plaintiff's responsibilities. (Doc. 19-13 at 12, ¶ 34.)

Plaintiff was 54 years old when she was terminated. (*See* Doc. 19-7 at 67 (providing Plaintiff's date of birth).) Commerce Title's other nine attorneys were ages 39, 40, 42, 43, 46, 47, 49, 51, and 70. (Doc. 19-2 at 9–10.) No attorney was "provided with [in-person] closing work specialists" (i.e., closing processors). (*Id.* at 10.) Since Achord and Babin elected to work remotely in early-2021, Commerce Title has not required either employee to resume working in-person full-

time. (Doc. 19-7 at 4.) But since May 4, 2023, Achord and Babin have each worked in-person one day per week. (*Id.*; *see also* Doc. 19-13 at 3–4, ¶ 7.)

On August 22, 2024, Plaintiff filed suit in this Court, alleging violations of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et seq.* (Doc. 1 at 5–8, ¶¶ 30–41.) Specifically, Plaintiff has alleged that Commerce Title "continuously harassed" her by "causing her to be overly burdened, all in an effort to force [her] to resign." (Doc. 19-13 at 2, ¶ 4 (quoting Doc. 1 at 4, ¶ 21); *see also* Doc. 19-3 at 3, ¶ 4 (positing that Commerce Title created this burden by "intentionally ke[eping]" Achord and Babin remote).) Plaintiff has also stated that "[n]o other attorney [at Commerce Title] was similarly situated to [her] because none were hired with the expectation that closing processors would have a physical presence in the office." (Doc. 19-13 at 4, ¶ 7.) Commerce Title now moves for summary judgment. (Doc. 19 at 1.)

## II.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

"A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule

6

56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." (emphasis in original))). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (quoting *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the movant bears its burden of showing that there is no genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted) (quoting Fed. R. Civ. P. 56(e)). The nonmovant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (cleaned up).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Additionally:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III. PARTIES' ARGUMENTS

### A. Defendant's *MSJ* (Doc. 19)

Defendant explains that the ADEA and the LEDL prohibit age discrimination in the

workplace. (Doc. 19-12 at 12–13 (citing 29 U.S.C. § 623(a)(1); La. R.S. § 23:311).) Where, as here, a plaintiff relies upon circumstantial evidence of age discrimination, the court must apply "the burden-shifting framework first announced in *McDonnell Douglas Corp. v. Green*." (*Id.* at 13 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also id.* at 13–14 (citing, *inter alia*, *Dabbasi v. Motiva Enters., L.L.C.*, 107 F.4th 500, 505 (5th Cir. 2024) (reciting *McDonnell Douglas*'s three steps)).) Because Defendant did not replace Plaintiff post-termination, Plaintiff must "prove that her employment at Commerce Title was terminated *because of her age*." (*Id.* at 14 (emphasis added).) Defendant argues that Plaintiff cannot meet this burden. (*Id.*)

Defendant notes that Plaintiff was an at-will employee and that there was no "formal, written employment contract." (*Id.* at 4 n.1.) Rather, Plaintiff "acknowledged that her employment at Commerce Title would be subject to the provisions appearing in Commerce Title's Employee Handbook." (*Id.*) "[N]o additional writing was ever executed by and between the parties for purposes of negating or otherwise varying any of th[e] [handbook's] provisions." (*Id.*) Plaintiff insists only that Stone and Beeson orally agreed that, as a condition of Plaintiff's employment, Achord and Babin would work in-person. (*Id.* at 3 (citing Doc. 1 at 3–4, ¶ 17).) But on August 9, 2020, Plaintiff signed the acknowledgement that she had received and reviewed the handbook, including its work-from-home provision, revised on July 15, 2020, to give employees like Achord and Babin the option to work from home permanently. (*Id.* at 16–17; *see also id.* at 15–16 (reproducing relevant portions of the Employee Handbook).)

By signing the acknowledgement, Plaintiff agreed that "no representative of the company ha[d] any authority . . . to assure any benefits or terms or conditions of employment, or make any agreement contrary to the [handbook's provisions]." (*Id.* at 16 (emphasis omitted) (quoting Doc. 19-7 at 66).) Likewise, she agreed that the handbook's provisions could not "be modified orally"

and that any modification needed to "be in writing and signed by the president of the company." (*Id.* (emphasis omitted) (quoting Doc. 19-7 at 66).) Defendant points out that Plaintiff "is an attorney who reviews [complex] contracts" and argues that, as such, she was capable of reading, understanding, and agreeing to the Employee Handbook. (*Id.* at 17.) Consequently, Plaintiff knew or should have known that—to the extent that she had reached an oral agreement with Stone and Beeson—it was insufficient to modify Defendant's remote work policy with respect to Achord and Babin. (*Id.* at 17–18.) By "accept[ing] and undert[aking] employment at Commerce Title without requesting . . . written variance" of the remote work policy, Plaintiff acquiesced thereto. (*Id.* at 20 (citing *MB Indus., LLC v. CNA Ins. Co.*, 2011-0303 (La. 10/25/11), 74 So. 3d 1173, 1180) (discussing equitable estoppel).)

Thus, Defendant argues, Plaintiff should be "equitably estopped . . . from urging" and "utilizing" the alleged oral agreement with Stone and Beeson. (*Id.* at 22.) Consequently, Plaintiff cannot demonstrate that the "decision to allow both Ms. Achord and Ms. Babin to work remotely represented an intentional effort by [Defendant] to subject [Plaintiff] to age discrimination." (*Id.* at 21.) Rather—consistent with Defendant's policy—Achord and Babin were entitled to elect to work remotely. (*Id.* at 17.) Relatedly, Defendant suggests that, because Plaintiff failed to obtain written modification of the remote work policy, she cannot now argue that the alleged oral agreement with Stone and Beeson sets her apart from the other nine attorneys employed by Defendant, eight of whom were over the age of forty at the time of Plaintiff's termination. (*See id.* at 22–23 (referencing Doc. 19-3 at 3, ¶ 5).)

Lastly, Defendant contends that Plaintiff was terminated for non-discriminatory reasons. (*Id.* at 23; *see also id.* at 25–26 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Leal v. McHugh*, 731 F.3d 405, 409–10 (5th Cir. 2013)) (explaining that "ADEA plaintiffs must prove

that age was the 'but-for cause'" of termination, not just a "motivating factor").) Defendant emphasizes that Plaintiff was "overwhelmed" by SoftPro, otherwise "struggled . . . to adapt to Commerce Title's workplace processes," and "frequently voice[d] her complaints regarding Commerce Title's digital system" to other employees. (*Id.* at 8 (citing Docs. 19-4, 19-5, 19-9).) After Achord and Babin elected to work remotely in early-2021, Plaintiff "became increasingly impatient with Commerce Title's digitally-based systems" and "frequently" expressed her displeasure with Defendant's remote work policy, particularly as it applied to Achord and Babin. (*Id.* at 9 (referencing Doc. 19-5).) Plaintiff even "began imposing" additional tasks on Achord. (*Id.* (referencing Doc. 19-4 at 3); *see also id.* at 9–10 (referencing Doc. 19-4 at 3–4) (listing some of the additional tasks).)

According to Defendant, Plaintiff contacted Thibodeaux "on multiple occasions" in order to express her "dislike for and unhappiness over Commerce Title's work processes and work-from-home polic[y]." (*Id.* at 10 (referencing Doc. 19-7 at 3); *see also id.* at 25.) Concomitantly, "[n]umerous employees" complained to Thibodeaux "that they had been disparaged or treated disrespectfully by [Plaintiff]," often in connection with Plaintiff's "dislike for and unhappiness over Commerce Title's work processes and work-from-home polic[y]." (*Id.* (referencing Doc. 19-7 at 3).) In every instance, Thibodeaux relayed to Stone and Beeson "both the details of such complaints and her efforts to resolve same." (*Id.* at 11 (referencing Doc. 19-7 at 4).)

Upon receiving Plaintiff's e-mail dated April 11, 2023, Stone and Beeson "finally accepted the reality" that all other Commerce Title attorneys "were productively managing all of their work during a normal business day"—without complaining, without "circumventing [Commerce Title's] systems and processes," and without creating additional work for other employees. (*Id.* at 11, 23–24.) No attorney received the in-person assistance which Plaintiff demanded. (*Id.* at 24–

10

25.) Stone and Beeson therefore terminated Plaintiff for: (1) "picking and choosing the company policies to which she would adhere"; (2) "expressing publicly [her] disdain for Commerce Title's . . . policies, processes and technology"; (3) treating other Commerce Title employees "insensitive[ly]"; and (4) lacking "understanding and commitment to Commerce Title to serve its customers expertly, professionally, and courteously." (*Id.* at 25–26 (referencing Doc. 19-2 at 8–9; Doc. 19-6 at 2).)

### B. Plaintiff's *Opposition* (Doc. 24)

Plaintiff agrees that the preliminary issue is whether she can prove that she was "discharged because of h[er] age." (Doc. 24 at 4 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352–53 (5th Cir. 2005), *overruled on other grounds by*, *Gross*, 557 U.S. 167).) Whereas Plaintiff has previously stated that "[n]o other attorney [at Commerce Title] was similarly situated . . . because none were hired with the expectation that closing processors would have a physical presence in the office," (Doc. 19-13 at 4, ¶ 7), she now contends that Commerce Title's younger attorneys *were* similarly situated and that—because Plaintiff's termination was designated a "layoff or reduction in force"—the retention of these younger attorneys permits "an inference that [Plaintiff] was terminated because of her age," (Doc. 24 at 4, 8 (citing *Machinchick*, 398 F.3d at 353; *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991))). Plaintiff also asserts that Defendant has given inconsistent reasons for termination, (*id.* at 5, 8 (referencing Doc. 19-2 at 8–9; Doc. 24-2 at 1)), which likewise "permits an inference of discrimination," (*id.* at 5 (citing *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1445 (11th Cir. 1998))).

Relatedly, Plaintiff contends that, "[i]n a reduction in force situation, subjective systems of evaluation are suspect," as is a defendant's "failure to . . . consistently apply its reduction in force criteria." (*Id.* at 6 (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002);

*Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 28 (1st Cir. 1998)).) Further, a defendant must "articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." (*Id.* (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004)).) "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification [for termination] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." (*Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)); *see also id.* at 6–8 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993); *Reeves*, 530 U.S. at 147).) Plaintiff argues that, because Defendant "has articulated varying and shifting reasons" for termination which are "all . . . false," the motion for summary judgment should be denied. (*Id.* at 9; *see also id.* at 8–9 (culminating in the assertion that Plaintiff "has shown that age was the true reason for [D]efendant's decision to terminate her employment").)

### C. Defendant's *Reply* (Doc. 27)

Defendant responds that "[t]he circumstances surrounding [P]laintiff's termination are thoroughly documented" in Defendant's submissions to the Court. (Doc. 27 at 1.) Plaintiff has not raised a genuine issue with respect to those submissions. (*Id.*) Rather, she opposes Defendant's *MSJ* on the ground that Defendant reported Plaintiff's termination to the Louisiana Workforce Commission as a "layoff"/"reduction in force." (*Id.* at 1–2 (referencing Doc. 24-2 at 1).) Defendant explains that, in the Separation Notice, it designated Plaintiff's termination a "layoff" because it "had no desire to disqualify [her] from receiving any unemployment compensation benefits to which [she] might have been entitled under Louisiana law." (*Id.* at 2–3 (citing La. R.S. §§ 23:1576, 23:1601).) This designation does not prove that Defendant discriminated against Plaintiff, much less that Defendant's other reasons for terminating Plaintiff were false. (*Id.* at 3.)

Next, Defendant argues that Plaintiff has mischaracterized *Machinchick v. PB Power, Inc.* (*Id.* at 4 (citing *Machinchick*, 398 F.3d at 352–54).) Specifically, in *Machinchick*, the defendant's decision to terminate the plaintiff while retaining a younger, similarly situated employee was just one of several facts establishing a *prima facie* case of age discrimination. (*Id.* at 4–5 (citing *Machinchick*, 398 F.3d at 352–54).) Here—in stark contrast to *Machinchick*—Plaintiff has "offered . . . only: (a) a factually unsupported allegation that Commerce Title committed age discrimination against her by 'intentionally' keeping" Achord and Babin remote in order to "create an undue burden" on Plaintiff, and "(b) the suggestion that [Plaintiff] has satisfied her burden to establish a prima facie case" because she was terminated in a "layoff" whereas younger attorneys kept their jobs. (*Id.* at 5–6 (quoting Doc. 1 at 4, ¶ 21).) Defendant contends that the fact that younger attorneys remained employed does not independently support the finding that Plaintiff has established a *prima facie* case. (*See id.* at 6–7.)

Defendant also emphasizes that, at the time of Plaintiff's termination, its other nine attorneys were ages 39, 40, 42, 43, 46, 47, 49, 51, and 70. (*Id.* at 7 (referencing Doc. 19-2 at 9–10).) It reiterates that no attorney worked with in-person assistance from closing processors. (*Id.* at 7–8.) And it posits that "the most logical inference" to be drawn from the parties' submissions is that Plaintiff "was just unwilling to function within the work structure for attorneys established at Commerce Title, a conspicuous part of which is Commerce Title's policy to allow clerical employees to work from home." (*Id.* at 8.) Lastly, Defendant notes that, under the *McDonnell Douglas* framework, the burden is on Plaintiff to show that she was "discharged because of h[er] age." (*Id.* at 8–9 (emphasis omitted) (quoting *Long v. City of Llano*, No. 24-50663, 2025 WL 655800, at *3 (5th Cir. Feb. 28, 2025) (per curiam)).) Ultimately, Plaintiff "must prove that age

was the 'but-for' cause" of her termination. (*Id.* at 9 (quoting *Gross*, 557 U.S. at 176).) According to Defendant, Plaintiff has not satisfied these burdens. (*Id.*)

IV.  **DISCUSSION**

   A.  **ADEA**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of [her] age." 29 U.S.C. § 623(a)(1). These prohibitions apply with respect to "individuals who are at least 40 years of age." *Id.* § 631(a). An individual claiming age discrimination "may present h[er] case by direct or circumstantial evidence, or both." *Awe v. Harris Health Sys.*, 163 F.4th 969, 972 (5th Cir. 2026). If the evidence merely creates an inference that the defendant-employer has engaged in age discrimination, then the evidence is circumstantial, and analysis must proceed under the *McDonnell Douglas* framework. *Id.*; *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (explaining that, although the Supreme Court has not resolved whether *McDonnell Douglas* applies to ADEA claims, the Fifth Circuit uses the framework).

The *McDonnell Douglas* framework has three steps: (1) The plaintiff must make out a *prima facie* case of age discrimination. *Awe*, 163 F.4th at 972. If she does so, then (2) the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (quotation omitted). Subsequently, (3) the court considers whether the plaintiff "has produced evidence from which a jury could conclude" that the defendant's stated reason for the adverse employment action is merely a pretext for discrimination. *Id.* (cleaned up). Although, under *McDonnell Douglas*, "intermediate evidentiary burdens shift back and forth . . . , '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### 1. *Prima Facie Case*

#### a. Applicable Law

A *prima facie* case "merely raises the inference of discrimination." *Holliday v. Commonwealth Brands, Inc.*, No. 10-2785, 2012 WL 72468, at *4 (E.D. La. Jan. 10, 2012) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 & n.44 (1977); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Consequently, establishing a *prima facie* case requires "a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1987)); *see also Burdine*, 450 U.S. at 253–54 (explaining, in the context of a Title VII claim, that the first step of *McDonnell Douglas* is merely intended to "eliminate[] the most common nondiscriminatory reasons" for an adverse employment action). Typically, the plaintiff "must show that (1) she was discharged, (2) she was qualified for the position, (3) she was within the protected class when she was discharged, and (4) she was 'either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.'" *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 301 (5th Cir. 2023) (quoting *Jackson*, 602 F.3d at 378).

In reduction-in-force cases, however, the plaintiff "can satisfy the fourth element by providing 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Rosenblatt v. 7-Eleven, Inc.*, No. 6-957, 2007 WL 2187252, at *4 (N.D. Tex. July 27, 2007) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (per curiam)); *accord Kisslinger v. ArcBest Corp.*, No. 23-41, 2025 WL 3760312, at *5 (S.D. Tex. Sept. 25, 2025) (citing *Nichols*, 81

F.3d at 41). Where the defendant has not replaced the plaintiff, the plaintiff can establish this fourth element "by evidence that members outside the protected class remained in similar positions after the [reduction in force]." *Rosenblatt*, 2007 WL 2187252, at *5 (citations omitted); *see also Kisslinger*, 2025 WL 3760312, at *6 (citations omitted) ("[A] plaintiff can still demonstrate a prima facie case of age discrimination when [s]he was the only one whose job was eliminated in a reduction in force . . . scenario.").

The plaintiff bears the burden of identifying a younger employee and showing that this younger employee was "similarly situated"—that is, that the circumstances of his or her employment were "nearly identical" to the plaintiff's own. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (quoting *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004)); *accord Long*, 2025 WL 655800, at *3 (citing *Berquist*, 500 F.3d at 353). Generally, employees are "similarly situated" if they "(1) have had the same job responsibilities; (2) have shared the same supervisor, or had their employment status determined by the same person; and (3) have comparable violation histories." *Hauser v. Schneider Elec. Sys. USA, Inc.*, No. 17-3223, 2019 WL 13251124, at *4 (S.D. Tex. May 29, 2019) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). "Unsupported and vague allegations concerning similarly situated employees are not enough to defeat summary judgment . . . ." *Long*, 2025 WL 655800, at *4.

b.  Analysis

Defendant does not dispute that Plaintiff was terminated, that she was qualified for the position, or that she belonged to the protected class (i.e., that she was over the age of forty) at the time of termination. (*See* Doc. 27 at 9.) Rather, the issue is whether Plaintiff has established the fourth element of her *prima facie* case. (*See id.*) Plaintiff argues that she was terminated during a "layoff"/"reduction in force." (*See* Doc. 24 at 4 (citing Doc. 24-2 at 1).) Thus, the Court first

considers whether Plaintiff has satisfied the reduction-in-force standard. But regardless of which version of the fourth element applies, no reasonable trier of fact could find that Plaintiff has established a *prima facie* case of age discrimination.

In order to meet the reduction-in-force standard, Plaintiff needed to identify one or more younger employees who were retained and to show that these younger employees were "similarly situated" to Plaintiff. *See Berquist*, 500 F.3d at 353. Plaintiff has not carried this burden. At most, she has gestured at the other nine attorneys whom Defendant employed, insisting that all nine were similarly situated. (*See* Doc. 24 at 4, 8.) Notably, this assertion represents an extraordinary about-face: In her interrogatory responses, Plaintiff averred that *no* other attorney was similarly situated to her. (Doc. 24-1 at 4, ¶ 4.) But, crediting Plaintiff's new position, the Court finds that Plaintiff has not shown the circumstances of any other attorney's employment to be "nearly identical" to her own. *See Berquist*, 500 F.3d at 353; *see also Hauser*, 2019 WL 13251124, at *4 (explaining that "similarly situated" generally means that employees have the same responsibilities, share the same supervisor or have their employment status determined by the same person, and have "comparable violation histories"); *id.* ("A plaintiff must also show that conduct that drew the adverse employment decision was nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." (cleaned up) (quoting *Lee*, 574 F.3d at 260)).

Plaintiff has presented no comparator for the Court's consideration. *Cf. Lee*, 574 F.3d at 262 (determining, in the context of a Title VII claim, that the plaintiff "satisfied his burden of establishing a prima facie case" by "validly identifying . . . a comparator"). Nor is there enough information in the record for the Court to ascertain whether any of the other attorneys were, in fact, similarly situated to Plaintiff. *See Allen*, 63 F.4th at 302 ("The district court found that [the plaintiff] could not rely on a comparison to Bickman because [the plaintiff] failed to identify

17

Bickman's age, supervisor, violation history, or whether she was also a probationary employee. But the record contains this information.").

Even if the Court considers the typical fourth element of a *prima facie* case, the outcome does not change. Plaintiff "points to no evidence to demonstrate" that her termination was, in fact, a form of age discrimination. *See Morse v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, No. 19-9240, 2020 WL 2037192, at *4 (E.D. La. Apr. 28, 2020). Rather, she insists only that there was an oral agreement that Achord and Babin would not "be 100% remote," (Doc. 24-1 at 6–7, ¶¶ 8–10; *see also id.* at 11, ¶ 20; Doc. 24-3 at 1, ¶ 1), and that, nevertheless, Defendant kept Achord and Babin remote in order to burden Plaintiff, (Doc. 19-3 at 3, ¶ 4).

Conspicuously, Plaintiff does not address Defendant's arguments about the Employee Handbook and Plaintiff's failure to obtain written modification thereof. (*See* Doc. 19-12 at 19–22.) "[W]hen a party does not address an issue in h[er] brief to the district court, that failure constitutes a waiver on appeal." *Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) (quoting *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.)). "By analogy, failure to brief an argument in the district court waives that argument in that court." *Id.* (quoting *JMCB*, 336 F. Supp. 3d at 634). "To avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases.'" *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). "It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *Id.*

Even if Plaintiff had not waived the argument—even if the Court assumes that there was a valid oral agreement—no reasonable trier of fact could find that Plaintiff was "discharged because of h[er] age." *See Allen*, 63 F.4th at 301. At most, Defendant's allowing Achord and Babin to work remotely despite the oral agreement supports an inference that Defendant was trying to burden Plaintiff, not that Defendant was trying to burden Plaintiff *because of Plaintiff's age*.[3] Plaintiff has pointed to no evidence, direct or circumstantial, which raises an inference of age discrimination. Consequently, she has not established a *prima facie* case.

### 2.    *Non-Discriminatory Reason & Pretext*

Had Plaintiff established a *prima facie* case of age discrimination, Defendant would still be entitled to summary judgment. Defendant has articulated a series of non-discriminatory reasons for terminating Plaintiff. And Plaintiff has not adequately demonstrated that such reasons are mere pretext for age discrimination.

### a.    Applicable Law

Where the plaintiff has established a *prima facie* case of age discrimination, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Awe*, 163 F.4th at 972. "This burden is one of production, not persuasion; it can involve no credibility assessment." *St. Pierre v. Dupont Specialty Prods. USA, LLC*, No. 22-781, 2024 WL 3094596, at *4 (M.D. La. June 21, 2024) (Jackson, J.) (quoting *Reeves*, 530 U.S. at 142). "If the defendant carries this burden, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255.

---

[3] Worth emphasizing: Even the more limited inference above requires a massive leap. It is undisputed that (1) closing processors like Achord and Babin worked remotely, (*see* Doc. 19-7 at 4–5), and (2) no other Commerce Title attorney received in-person assistance from closing processors, (Doc. 19-2 at 10). Necessarily, then, it is Plaintiff's contention that Defendant was trying to burden her by treating Achord and Babin like other clerical employees and, in the process, placing Plaintiff in the same position as Commerce Title's other attorneys.

At that point, the court considers whether the plaintiff "has produced evidence from which a jury could conclude" that the defendant's proffered reason is mere pretext for discrimination. *Awe*, 163 F.4th at 972; *accord Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143) ("To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."); *Dabbasi*, 107 F.4th at 507 ("An ADEA plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. In other words, the discrimination must be the 'but-for' cause of the employment action." (cleaned up)). "At summary judgment [the plaintiff] must offer enough evidence to raise a genuine question of fact regarding [the defendant-employer's] reasons for firing h[er]." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019).

"[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the [defendant] employer's explanation [for termination]." *Reeves*, 530 U.S. at 147 (emphasis in original); *see also id.* (citing *St. Mary's Honor Ctr.*, 509 U.S. at 517) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination . . . ."). Consequently, the plaintiff's *prima facie* case, "combined with sufficient evidence to find that the [defendant] employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added).

The operative word is "may." *See id.* "[T]here will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the [defendant's] action was discriminatory." *Id.* If, for example, the plaintiff has "created only a weak issue of fact as to

whether the employer's reason was untrue and there [i]s abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," the defendant is likely still entitled to summary judgment. *See id.* at 148–49; *accord Holliday*, 2012 WL 72468, at *7 ("[I]t is 'possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.'" (quoting *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003))); *see also Amburgey*, 936 F.2d at 814 ("[T]he salutary function of summary judgment in the employment discrimination arena is that summary judgment allows patently meritless cases to be nipped in the bud. Where there is only an attenuated possibility that a jury would infer a discriminatory motive, proceeding serves no useful function." (cleaned up)).

b. <u>Analysis</u>

Defendant has carried its burden of articulating a non-discriminatory reason for Plaintiff's termination. A reduction in force "is presumptively a legitimate, non-discriminatory reason for a discharge." *Rosenblatt*, 2007 WL 2187252, at *6 (citations omitted); *accord McMichael*, 934 F.3d at 456 & n.4. Likewise, Defendant's other reasons for terminating Plaintiff—(1) "picking and choosing the company policies to which she would adhere"; (2) "expressing publicly [her] disdain for Commerce Title's . . . policies, processes and technology"; (3) treating other Commerce Title employees "insensitive[ly]"; and (4) lacking "understanding and commitment to Commerce Title to serve its customers expertly, professionally, and courteously"—are non-discriminatory. (Doc. 19-2 at 8–9; Doc. 19-6 at 2); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age . . . ." (emphasis omitted)). Plaintiff must therefore raise a genuine question of

fact concerning whether Defendant's reasons for termination are a pretext for discrimination. *See McMichael*, 934 F.3d at 456.

A defendant's "inconsistent explanations" for termination can "'cast doubt' on the truthfulness of those explanations." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002)). Here, Plaintiff has argued that Defendant's reasons for terminating her—"reduction in force" versus the reasons given by Stone and Beeson—are "varying." (Doc. 24 at 5, 8.) Importantly, "varying" does not necessarily mean "inconsistent." It can be the case, for example, that there was a reduction in force *and* that Plaintiff was terminated during that reduction in force because of the reasons given by Stone and Beeson. In *Broussard v. Stabil Drill Specialties, L.L.C.*, the Fifth Circuit reasoned:

> Broussard is correct that an employer's contradictory or implausible proffered reasons for its actions may establish pretextual motives, but there is no evidence in the record of such inconsistencies. Stabil has repeatedly explained that Broussard was demoted because of a demonstrated lack of management skills and was terminated because of a company-wide reduction in force. Broussard believes that a deposition in which Stabil stated that he was terminated because of his 'performance history' establishes inconsistency and thus pretext. But that statement is entirely consistent with Stabil's reduction-in-force rationale, as the termination decisions during that process included a consideration of an employee's prior discipline for poor performance.

*Broussard v. Stabil Drill Specialties, L.L.C.*, No. 23-30383, 2023 WL 8613608, at *2 (5th Cir. Dec. 13, 2023) (per curiam) (citation omitted); *cf. Caldwell*, 850 F.3d at 242–44 (providing an example of inconsistent reasons). Here, it appears that everyone—including Plaintiff—understood at least some of the reasons why Plaintiff was terminated. (*See* Doc. 19-2 at 20 ("Love the people but the processes are killing me. That's all anyone will think about my exit, that I wasn't my best self.").) There is no indication that these reasons have shifted over time.

But even if a plaintiff shows that a defendant's reasons for termination are inconsistent, the facts of the particular case must be such "that inconsistency and lack of criteria could lead to a

reasonable inference of *pretext*." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 830–31 (5th Cir. 2022) (emphasis added). Thus, a plaintiff "must produce sufficient evidence of implausibility to permit an inference of *discrimination*, not merely an inference that [the defendant's] proffered reason is false." *Id.* at 831 (emphasis in original). Here, Plaintiff has, at most, shown that Defendant's reasons for termination were inconsistent. (*See* Doc. 24 at 5, 8.) "But she has presented a mere scintilla of evidence that the true reason for her termination was discriminatory animus, and 'the burden of proof [is hers] throughout.'" *See Owens*, 33 F.4th at 834 (quoting *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022)); *see also Holliday*, 2012 WL 72468, at *5, *7 (citing, *inter alia*, *Rosenblatt*, 2007 WL 2187252, at *12) (granting summary judgment where the plaintiff had "at most created only a weak fact issue" and where there was "abundant, uncontroverted evidence" that the plaintiff's "work performance was inadequate"); *Campbell v. Zayo Grp., LLC*, No. 13-2192, 2015 WL 3903539, at *8 (N.D. Tex. June 25, 2015) ("Aside from the fact that Campbell was 62 years old when he was terminated, he presents no evidence that would enable a reasonable jury to find that his age, as opposed to some other reason, was the but-for cause of his termination.").

On the other hand, "there is abundant, uncontroverted evidence that no age discrimination occurred" here. *See Rosenblatt*, 2007 WL 2187252, at *12. Defendant hired Plaintiff when she was 51. (*See* Doc. 19-7 at 67; Doc. 19-13 at 2, ¶ 3.) "There is no evidence that [Plaintiff's] age was ever considered in any respect or that anyone at [Commerce Title] ever made any negative age-related comments about [Plaintiff]." *See Rosenblatt*, 2007 WL 2187252, at *12. In fact, the record reflects that *Plaintiff* is the only one who ever made an age-related comment. (Doc. 19-2 at 20 ("Probably the more accurate adage is that you can't teach an old dog new tricks.").) At the same time, Plaintiff does not dispute that: (1) She was "overwhelmed" by SoftPro. (Doc. 19-13 at

23

8–9, ¶¶ 17, 21.) (2) She deviated from Defendant's digital system, (*see, e.g.*, Doc. 19-2 at 5), thereby creating additional work for other employees, (Doc. 19-13, 7–8, ¶ 16), particularly Achord and Babin, (*id.*; Doc. 19-2 at 6). (3) She "frequently communicated" her struggles and displeasure with Commerce Title's remote work policy, its digital system, and its processes. (Doc. 19-13 at 8–9, ¶¶ 19, 22–23; *see also id.* at 10–11, ¶ 27; Doc. 24-1 at 12, ¶ 23.) And (4) she was the subject of multiple complaints by other employees, who felt that they had been "treated disrespectfully" by her, often in connection with her "dislike for and unhappiness with Commerce Title's work-from-home polic[y]." (Doc. 19-13 at 9–10, ¶¶ 24–25; *see also* Doc. 24-1 at 12–13, ¶¶ 24–25.) Given the above, no reasonable trier of fact could find that Defendant's stated reasons for terminating Plaintiff were mere pretext for age discrimination.[4]

Plaintiff has argued that "[y]ounger, *less qualified*, but otherwise similarly situated individuals were retained" while she was terminated.[5] (Doc. 24 at 8 (emphasis added).) Worth repeating, Plaintiff has not carried her burden of demonstrating that any of the other attorneys employed by Defendant were similarly situated. Indeed, until her *Opposition*, it was Plaintiff's position that *no* other attorney was similarly situated. (Doc. 24-1 at 4, ¶ 4.) But even if Plaintiff had met her initial burden, she would still need to "provide sufficiently specific reasons for h[er] opinion" that she was better qualified than other attorneys. *See Nichols*, 81 F.3d at 42. "In the Fifth

---

[4] On the contrary, the Court is inclined to agree with Defendant that—to the extent that Defendant's reasons are inconsistent—the reasonable inference is that Plaintiff was terminated for the reasons given by Stone and Beeson and that Defendant's designating the termination a "layoff"/"reduction in force" was really for *Plaintiff's* benefit. (*See* Doc. 27 at 1–4.)

[5] Plaintiff makes a related argument—that "subjective systems of evaluation are suspect" and that, "absent evidence that an employer's system of ranking and evaluation relies on objective criteria, an employee can satisfy h[er] burden to demonstrate pretext." (Doc. 24 at 6 (citing *Garrett*, 305 F.3d at 1218).) Notably, Plaintiff nowhere suggests that Defendant used a subjective system of evaluation. (*See* Doc. 24.) But regardless, Plaintiff is wrong about the law. "The mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002)). The Tenth Circuit case on which Plaintiff relies does not support Plaintiff's position either. *See Garrett*, 305 F.3d at 1218 (explaining that subjective criteria may be evidence of pretext, not that subjective criteria automatically establish pretext); *see also id.* at 1217–20 (noting that, in addition to "the use of subjective criteria," there was "ample evidence of inconsistent treatment of plaintiff," as well as "disturbing procedural irregularities").

Circuit, '[i]n order to succeed on a discrimination claim in a [reduction in force] situation, it is incumbent upon the terminated employee to prove that [s]he was clearly better qualified than the retained employees.'" *Payne v. S.W. Bell Tel., L.P.*, 562 F. Supp. 2d 780, 784 (E.D. Tex. 2005) (quoting *Jarvis v. Cirrus Logic, Inc.*, 97 F. App'x 493, 493 (5th Cir. 2004)). "[M]ere subjective speculation will not suffice." *Nichols*, 81 F.3d at 42. Other than the bare assertion that younger attorneys were less qualified, Plaintiff makes no mention of qualifications. (*See* Doc. 24 at 8.)

### B. LEDL

Louisiana Revised Statutes § 23:312 mirrors the ADEA, providing: "It is unlawful for an employer to . . . discharge . . . or otherwise discriminate against any individual with respect to h[er] compensation, or h[er] terms, conditions, or privileges of employment because of the individual's age." La. R.S. § 23:312(A)(1); *see also id.* § 23:311 ("The prohibitions of this Part shall be limited to individuals who are at least forty years of age."). "Because Louisiana's prohibition against age discrimination is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance." *LaBove v. Raftery*, 2000-1394 (La. 11/28/01), 802 So. 2d 566, 573. Thus, the *McDonnell Douglas* framework and the analysis above apply to Plaintiff's LEDL claim. *See id.* at 573–74 (citing, *inter alia*, *Reeves*, 530 U.S. at 143); *Majors v. Dillard Univ.*, 2022-0789 (La. App. 4 Cir. 5/8/23), 368 So. 3d 116, 121 (citing *LaBove*, 802 So. 2d at 573). Consequently, Plaintiff's LEDL claim also "cannot survive summary judgment." *See Morse*, 2020 WL 2037192, at *6 ("For the reasons explained above, plaintiff's claim for age discrimination under the ADEA cannot pass muster at the summary judgment stage. And for the same reasons, plaintiff's LEDL claim for age discrimination cannot survive summary judgment and must be dismissed.").

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Commerce Title & Abstract Company's *Motion for Summary Judgment* (Doc. 19) is **GRANTED**, and Plaintiff's claims against Defendant will be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>February 27, 2026</u>.

 

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**